UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **ARNOLD B. CURTIS**<br>     **PRISONER NO. 1409083**<br>**VS.** | **CIVIL ACTION NO. 09-1442**<br><br>**SECTION P**<br><br>**CHIEF JUDGE JAMES** |
| **SHERIFF TONEY, ET AL.** | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

*Pro se* plaintiff Arnold B. Curtis, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on August 10, 2009. Plaintiff is a pre-trial detainee incarcerated at the Ouachita Parish Corrections Center (OPCC), Monroe, Louisiana. Plaintiff complains that he is being denied medical care for an injury he received in an altercation with another OPCC prisoner in September 2008. Plaintiff has sued Ouachita Parish Sheriff Toney, OPCC Warden Brian Newcomer, and the OPCC Medical Department. He seeks injunctive relief and an unspecified amount of compensatory and punitive damages.[1] His previous requests for a temporary restraining order and the appointment of counsel [Docs. 3, 4, 11] have been denied [Docs. 8, 12, 13]

The complaint and associated pleadings have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief

---

[1] Plaintiff's prayer for relief is as follows: "Oral Surgery, compensatory damages, punitive damages..." [Doc. 1, ¶V]

may be granted.

## *Background*

### *1. Original Complaint [Doc. 1] and Associated Pleadings*

Plaintiff enjoyed trusty status and prison employment prior to September 21, 2008. On that date he was involved in a physical altercation with a convict named Cedric Anderson. Plaintiff's jaw was injured when, after a corrections officer broke up the fight, Anderson "sucker punched" plaintiff. Plaintiff was taken to nearby E.A. Conway Hospital where he was examined and x-rayed. The treating physician concluded that plaintiff was not seriously injured and ordered him returned to the OPCC. [Doc. 1, p. 9]

On some unspecified date thereafter, plaintiff, who was experiencing "discomfort with [his] jaws, gums, and teeth" requested and was afforded a dental examination. The dentist concluded that plaintiff experienced discomfort because one of his teeth was "disfigured." Plaintiff was provided medication. [*Id*.]

On October 1, 2008, plaintiff's assailant, Eric Anderson, resumed his trusty and prison job status. Plaintiff submitted two prison grievances complaining of "favoritism"; however, Warden Newcomer did not respond to either grievance. [*Id*., pp. 9-10]

On October 7, 2008, plaintiff was examined by a physician who, in turn, wrote a "request" that plaintiff be examined by an "oral surgeon." [*Id*., p. 10] On October 28, 2008, plaintiff submitted a grievance requesting resumption of his trusty status and prison job and requesting further medical attention for his jaw. The shift supervisor responded to the grievance and advised plaintiff that he would be unable to resume trusty status. He then advised plaintiff that his medical claim would be addressed by the medical department. [Doc. 1, pp. 7-8]

Plaintiff filed his original complaint on August 10, 2009. On the same date he filed a Motion for Temporary Restraining Order seeking to restrain the defendants "... from denying [plaintiff] oral health care by denying to get [his] jaw [and] mouth fixed." [Doc. 3] He also filed a Motion to Appoint Counsel [Doc. 4] On September 21, 2009, the undersigned denied both motions. [Doc. 8]

*2. First Amended Complaint [Doc. 10] and Associated Pleadings*

On October 1, 2009, plaintiff filed an amended complaint. [Doc. 10] Therein he complained that the facts alleged in his earlier pleadings were misconstrued. Plaintiff then alleged that he was examined by a dentist at the Forcht-Wade Corrections Center in October 2008. According to plaintiff, this dentist recommended that plaintiff be examined by an oral surgeon at the LSU Medical Center because his teeth were "disfigured" and his jaw was broken. Plaintiff was then taken to LSU Medical Center where his wisdom teeth were extracted. According to plaintiff, the dentist at LSUMC also noted that his "jaw and teeth was disfigured" and that he needed to be seen by an oral surgeon. According to plaintiff, the dentist also suggested that plaintiff's jaw had healed incorrectly and would need to be "reset." Plaintiff was also advised that OPCC's insurance did not cover the contemplated procedure. [Doc. 10]

On November 16, 2009, plaintiff filed another "Motion for Temporary Restraining Order and Motion for Appointment of Counsel." He requested the TRO because of the "discomfort" he has experienced for over a year now; he requested appointment of counsel claiming again that he is unable to afford counsel, that his ability to litigate is limited by the fact of his incarceration, and that his efforts to retain counsel have proved fruitless. [Doc. 11]

*3. Amend Order [Doc. 12]*

On November 18, 2009, the undersigned completed an initial review of plaintiff's pleadings. Plaintiff's complaint was deemed deficient and plaintiff was instructed to amend his complaint to comply with the requirement of FRCP Rule 8. Among other things, the undersigned noted:

> Plaintiff has named three defendants – the sheriff, the warden, and the OPCC 'Medical Department.' <u>As is shown more fully below, his claims against these three defendants are subject to dismissal unless plaintiff can show personal involvement on the part of the supervisory defendants and juridical status on the part of the remaining defendant</u>. In any event, with respect to these or any other defendants, plaintiff should provide the information required by Rule 8.[2] [Doc. 12 (emphasis supplied)].

---

[2] With regard to defendants Toney and Newcomer, the undersigned advised, "Plaintiff has sued the Sheriff and the Warden. However, he has not alleged specific fault on their part. To the extent that he named these defendants in their supervisory capacity, he is advised: 'Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries.' *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993). 'Vicarious liability does not apply to § 1983 claims.' *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). 'Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), *cert. denied*, 464 U.S. 897, 104 S.Ct. 248, 78 L.Ed.2d 236 (1983). In other words, to the extent that plaintiff seeks to name supervisory officials, such as Sheriff Toney or Warden Newcomer as defendants, he must allege facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by those defendants. Plaintiff should amend his pleadings accordingly." [Doc. 12]

With regard to his suit against the OPCC Medical Department, he was advised, "Plaintiff has sued the OPCC Medical Department. Fed. R. Civ. P. 17(b) provides that the 'capacity to sue or be sued shall be determined by the law of the state in which the district court is held.' Thus, Louisiana law governs whether this entity has the capacity to be sued in this action. Under Louisiana law, to possess such a capacity, an entity must qualify as a 'juridical person.' This term is defined by the Louisiana Civil Code as '... an entity to which the law attributes personality, such as a corporation or partnership.' La. Civ.Code Ann. art. 24. OPCC is a parish corrections facility operated by the sheriff of Ouachita Parish. [Compare La. Atty. Gen. Op. No. 03-0437, 2003 WL 23146623; see also, *Langley v. City of Monroe*, 582 So.2d 367 (La. App. 2d Cir. 1991) and La. R.S.15:702 (The parish governing authority is charged with the duty to provide a good and sufficient jail and to provide for the physical maintenance of parish jails and prisons; however, the administration of such jails is within the province of the sheriff who has the duty of operating the jail and insuring that prisoners are properly cared for, fed and clothed.)]. The OPCC 'Medical Department' is also not a juridical person capable of being sued. *Oladipupo v. Austin*, 104 F.Supp.2d 626, 641-42 (W.D.La.2000). Plaintiff should amend his complaint and dismiss this non-juridical defendant, or demonstrate that the Medical Department is an entity capable of being sued." [*Id*.]

4

*4. Second Amended Complaint [Doc. 14]*

On December 1, 2009, plaintiff amended his complaint. He alleged that Deputy Hudson was on duty at the time of the altercation involving plaintiff and inmate Anderson. According to plaintiff, Dy. Hudson ordered the pair to separate. Plaintiff apparently obeyed the command and Anderson "sucker punched" him, dislocating his jaw. Plaintiff faults Hudson for not following "procedure" which dictates that once combatants are separated, they are to be placed on the ground. According to plaintiff, had Hudson followed this procedure, he would not have been injured.

Plaintiff also claimed that Corporal Jergens was the supervisor on the scene. Jergens escorted plaintiff to the nurse's station where an unnamed nurse examined plaintiff's jaw. Jergens was of the opinion that plaintiff did not need to be taken to the hospital; however, the nurse ignored Jergens's opinion and sent plaintiff to the hospital for further examination and treatment.

Plaintiff was examined by the emergency room physician who was of the opinion that plaintiff "... was not seriously injured."

Days later, after he was returned to OPCC, plaintiff was again examined by a physician. He recommended that plaintiff be examined by an oral surgeon at the LSU Medical Center in Shreveport.

Plaintiff then went to the nurses station. The nurses recommended that plaintiff be examined by another physician. He was again examined and the physician also recommended that plaintiff be examined by an oral surgeon at LSU. Plaintiff, however, was sent to the Forcht-Wade Corrections Center where he was examined by a dentist. The dentist at Forcht-Wade made

an appointment for plaintiff to see the oral surgeon at LSU Medical Center in January 2009. However, due to "... a mix up in the paperwork..." plaintiff was unable to make that appointment.

Plaintiff concluded his amended complaint by stating,

> The facts remain that my jaw was broke by Cedric Anderson who was a D.O.C. Inmate and I'm a Pre Trial Inmate. I've followed every procedure and rule, even the chain of command. This is why I find that Sheriff Toney and Warden Newcomer has violated my Constitutional Rights. I followed the proper channels of the procedure having been and where followed to correct my injuries. Having gone through all procedures my jaw is not fixed. I was injured at O.C.C. I ask that the Courts please grant me relief and order O.C.C. to fix my mouth and jaw without further delays. [doc. 14, p. 2]

*Law and Analysis*

*1. Screening*

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, but they are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). Furthermore, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff has filed an original complaint, amended complaints and numerous motions, all of which adequately detail his claims for relief, the evidence supporting those claims, and the relief sought on each claim. Each fact alleged has been assumed to be true for the purposes of this Report, and, since it appears that plaintiff has adequately set forth his claims for relief, further amendment of the pleadings would serve no useful purpose.

*2. Failure to Protect*

Plaintiff implies that the defendants are liable for their failure to protect him from attack at the hands of an LDOC convict who was housed with plaintiff. Plaintiff, of course, was a pre-trial detainee. When a pre-trial detainee alleges a failure to protect claim, it arises under the

Fourteenth Amendment's due process clause and the standard for judicial review of such claims is "deliberate indifference." *Hare v. City of Corinth*, 74 F.3d 633, 638 (5th Cir.1996) (*en banc*). In other words, plaintiff's right to protection from violence is measured by the standard of subjective deliberate indifference enunciated by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Under that standard, a prison official is not liable for failing to protect either an inmate or a detainee unless the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). In order to prevail plaintiff must establish that the defendant officials: (1) were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and, (2) actually drew the inference. *Farmer*, 511 U.S. at 837. Negligent inaction can never be the basis of a failure to protect claim. *Farmer*, 511 U.S. at 835; *Hare*, 74 F.3d at 642. The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of defendants. *Johnson v. Treen*, 759 F.2d 1236, 1237 (5th Cir.1985). In *Smith v. Wade*, 461 U.S. 30, 39 n. 8, 103 S.C. 1625, 1632 n. 8, 75 L.Ed.2d 632 (1983), the Court approved the following definition of wanton: "'Wanton means reckless – without regard to the rights of others ... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure.' 30 American and English Encyclopedia of Law 2-4 (2d ed. 905) (footnotes omitted)."

Nothing in plaintiff's complaint suggests that the specific defendants – Sheriff Toney and Warden Newcomer – were guilty of deliberate indifference with regard to the unanticipated assault. Nothing suggests that these defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. Even assuming that these defendants were aware of such facts, nothing suggests that they actually drew such an inference.

Further, to the extent that plaintiff faults Dy. Hudson, his claim fares no better. According to plaintiff, Hudson failed to follow proper procedures when he broke up the fight between plaintiff and inmate Anderson. At worst, Hudson was negligent and it was his negligence that arguably resulted in plaintiff's injury. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988). The deprivation must be intentional, as negligent conduct cannot serve as the basis for a §1983 claim. See *Jackson v. Procunier*, 789 F.2d 307, 310 (5th Cir.1986); *Farmer*, 511 U.S. at 835; *Hare*, 74 F.3d at 642.

Thus, plaintiff, having failed to show deliberate indifference on the part of either Sheriff Toney, Warden Newcomer, or even Dy. Hudson, has failed to state a claim for which relief may be granted.

### 3. Medical Care

Plaintiff's medical care claim must also be evaluated under the same deliberate indifference standard discussed above. "[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner], ignored his

9

complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a <u>wanton disregard</u> for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)). Thus, even "... the failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from <u>a negligent or even a grossly negligent response</u> to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied); *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).  Mere disagreement with diagnosis and treatment can never support a claim of deliberate indifference*.  Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995);  *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

  As shown previously, plaintiff received immediate and continual medical or dental care once prison officials were made aware of his injury.  Plaintiff was taken to a nearby hospital where he was examined by a physician who determined that his injury was not serious. Thereafter, plaintiff was examined by nurses, physicians, and at least one dentist.  His wisdom teeth were extracted and he received additional attention.  An appointment was made for plaintiff to be examined by an oral surgeon, but, even by his own admission, this appointment was cancelled, not because of the deliberate indifference of the defendants, but rather because of a "mix up in paperwork."  As shown above, such negligence does not support a claim for

deliberate indifference.

      Plaintiff has not shown that the named defendants – Warden Newcomer and Sheriff Toney – or anyone else "'refused to treat [him], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a <u>wanton disregard</u> for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)). Plaintiff's medical care claim with regard to Warden Newcomer and Sheriff Toney fails to state a claim for which relief may be granted. Further, to the extent that plaintiff seeks to fault Cpl. Jergens, his claim is also frivolous. By his own admission, Jergens's decision regarding medical care was rejected by the prison nurse.

*4. Juridical Entity*

      Finally, plaintiff was advised that his suit against the OPCC "Medical Department" would be dismissed since the OPCC and its "Medical Department" are not juridical entities capable of being sued. As noted above, Fed. R. Civ. P. 17(b) provides that the "capacity to sue or be sued shall be determined by the law of the state in which the district court is held." Under Louisiana law, to possess such capacity, an entity must qualify as a "juridical person." This term is defined by the Louisiana Civil Code as "... an entity to which the law attributes personality, such as a corporation or partnership." La. Civ.Code Ann. art. 24. OPCC is a parish corrections facility operated by the sheriff of Ouachita Parish. [Compare La. Atty. Gen. Op. No. 03-0437, 2003 WL 23146623; see also, *Langley v. City of Monroe*, 582 So.2d 367 (La. App. 2d Cir. 1991) and La. R.S.15:702 (The parish governing authority is charged with the duty to provide a good and sufficient jail and to provide for the physical maintenance of parish jails and prisons;

11

however, the administration of such jails is within the province of the sheriff who has the duty of operating the jail and insuring that prisoners are properly cared for, fed and clothed.)]. The OPCC is not a juridical person and cannot be sued. Likewise, the OPCC "Medical Department" is also not a juridical person capable of being sued. *Compare Oladipupo v. Austin*, 104 F.Supp.2d 626, 641-42 (W.D.La.2000). Plaintiff's claims against the "Medical Department" must be dismissed as frivolous.

*5. Conclusion and Recommendation*

Plaintiff has failed to show that the defendants Toney and Newcomer, or anyone else, were guilty of deliberate indifference with regard to either the assault or its aftermath. He has failed to state a claim for which relief may be granted. Further, his suit against the OPCC Medical Department is frivolous because the Medical Department is not capable of being sued. Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim for which relief may be granted in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b),**

**shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglass v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, February 10, 2010.

*[signature]*

KAREN L. HAYES
U. S. MAGISTRATE JUDGE